# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| IKORONGO TECHNOLOGY LLC and IKORONGO TEXAS LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS INC., and LG ELECTRONICS U.S.A., INC.,<br><br>    Defendants. | Civil Action No. 6:20-cv-257-ADA<br><br><br><br>**JURY TRIAL DEMANDED** |

### DEFENDANTS' OPPOSED MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................................... 1
    A. Ikorongo's Allegations Are Directed At Third-Party Applications ....................... 1
    B. Google is Located in the NDCA ............................................................................ 2
    C. Relevant LG Employees and Documents Are Not in This District ....................... 3
    D. AT&T Secure Family Was Researched, Designed, and Developed in the NDCA ...................................................................................................................... 4
    E. Named Inventors Are Located in the NDCA ......................................................... 4
III. LEGAL STANDARD ........................................................................................................... 4
IV. THIS CASE COULD HAVE BEEN FILED IN THE NDCA ............................................. 5
V. THE NDCA IS THE MOST CONVENIENT FORUM FOR THIS CASE ........................ 6
    A. The Private Interest Factors Heavily Favor Transfer to the NDCA ....................... 6
        1. The Relative Access to Sources of Proof ................................................... 6
        2. The Availability of Compulsory Process to Secure the Attendance of Witnesses ................................................................................................ 7
        3. The Convenience of Third-Party Witnesses and Party Witnesses Strongly Favors Transfer ............................................................................ 8
        4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive ................................................................... 10
    B. The Public Interest Factors Favor Transfer ......................................................... 10
VI. CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
　358 F.3d 337 (5th Cir. 2004) ................................................................................................... 5

*DataQuill, Ltd. v. Apple Inc.*,
　No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) .................................... 7

*In re Adobe Inc.*,
　No. 2020-126, 2020 WL 4308164 (Fed. Cir. July 28, 2020) ............................................. 9, 10

*In re Genentech, Inc.*,
　566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................ passim

*In re Volkswagen AG*,
　371 F.3d 201 (5th Cir. 2004) (*Volkswagen I*) ........................................................................... 5

*In re Volkswagen of Am., Inc.*,
　545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*) .............................................................. 5, 6, 7, 8

*Parus Holdings Inc. v. LG Elecs. Inc.*,
　No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ..................... 1, 8, 9

*Wet Sounds, Inc. v. Audio Formz, LLC*,
　No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) .................................... 9

*XY, LLC v. Trans Ova Genetics, LC*,
　No. 16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...................................... 6

**Statutes**

28 U.S.C. § 1391(c)(3) .................................................................................................................. 5

28 U.S.C. § 1400(b) ...................................................................................................................... 5

28 U.S.C. § 1404(a) ...................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................................................... 7

**I.      INTRODUCTION**

Pursuant to 28 U.S.C. § 1404(a), Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG") seek transfer of this action to the Northern District of California ("NDCA"). The private and public interest factors courts deem most important—convenience for witnesses, particularly third-party witnesses, compulsory process for third parties, and the location of evidence—all weigh in favor of transfer. Indeed, this Court recently granted LG's motion to transfer in *Parus Holdings* under similar circumstances. *See Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020).

Transfer to the NDCA is clearly more convenient. While Plaintiffs Ikorongo Technology LLC and Ikorongo Texas LLC (collectively, "Ikorongo") allege infringement against smartphones sold by LG, Ikorongo's infringement contentions are directed at functionality found in the Google Maps, Google+, Google Play Music, YouTube Music, and AT&T Secure Family applications (collectively, the "Accused Applications") running on those smartphones. For three out of the five applications, the accused features were developed in the NDCA: Google Maps, Google+, and AT&T Secure Family. The accused features in Google Play Music and YouTube Music were primarily developed in New York City. *None* of the Accused Applications were developed in the Western District of Texas ("WDTX"). Moreover, two of the named inventors of the four asserted patents currently reside in the NDCA, and no named inventors or other third-party witnesses appear to be located in the WDTX. Because the location of the third parties and evidence in the NDCA strongly favor transfer, this action should be transferred to the NDCA.

**II.     FACTUAL BACKGROUND**

    **A.     Ikorongo's Allegations Are Directed At Third-Party Applications**

Ikorongo alleges that LG's smartphones and tablets infringe four patents—U.S. Patent Nos. RE41,450 (the "'450 Patent"); RE45,543 (the "'543 Patent"); RE47,704 (the "'704 Patent"); and

8,874,554 (the "'554 Patent") (collectively, "Asserted Patents"). The three reissue patents are directed to users sharing visited geographic location data with a group of other users using mobile devices. Am. Compl., ECF No. 2, Exs. F-H. The '554 Patent is directed to providing location-based media recommendations. Am. Compl., ECF No. 2, Ex. I.

Ikorongo's preliminary infringement contentions, served on August 8, 2020, make clear that its allegations rely on functionality found in the Accused Applications. *See* Lau Decl., Ex. 1 (Ikorongo Infringement Contentions Cover Pleading) at 1, 3-4, 6. Indeed, Ikorongo's allegations concern devices "preloaded" with the Accused Applications. *Id.*

### B.     Google is Located in the NDCA

Third-party Google, LLC ("Google") is a Delaware limited liability company with its principal place of business in Mountain View in the NDCA. Declaration of Daniel S. Friedland in Support of Defendants' Motion to Transfer ("Friedland Decl.") ¶ 2. Google's headquarters, which includes offices in Sunnyvale and San Francisco (collectively referred to as "Bay Area"), is the strategic center of Google's business. *Id.*

Google's employees knowledgeable about the accused Google Maps and Google+ features are based in the NDCA. *Id.* ¶¶ 4-8. For example, the engineer who leads a team working on location sharing for Google Maps is based in Mountain View, along with her team members. *Id.* ¶ 5. Another engineer who leads a team working on Android location infrastructure and his team members are also based in Mountain View. *Id.* Additionally, the team of engineers that developed and supported the accused Google+ features were located in Mountain View. *Id.* ¶¶ 7-8. Google is unaware of any employees located in the WDTX who have worked on the accused Google Maps and Google+ functionality. *Id.* ¶¶ 5, 8.

Google's employees knowledgeable about the accused Google Play Music and YouTube Music features are located primarily in New York City, with team members also located in Seattle

and Mountain View.  *Id.* ¶¶ 9-10.  For example, one engineer who has worked on the accused Google Play Music and YouTube Music features is currently based in Seattle, Washington, but belongs to a broader team of engineers, most of whom are based in New York City.  *Id.* ¶ 10.  Google is unaware of any employees who have worked on the accused Google Play Music and YouTube Music functionality and are located in the WDTX.  *Id.*

    **C.**  **Relevant LG Employees and Documents Are Not in This District**

    Defendant LG Electronics, Inc. ("LGEKR") is a corporation founded under the laws of Korea with its principal place of business in Korea.  Declaration of JuSeong Ryu in Support of Defendants' Motion to Transfer ("Ryu Decl.") ¶ 6.  All of LGEKR's design, engineering, and manufacturing work for the accused LG devices is done outside the United States, mostly in Korea.  *Id*.  LGEKR does not have offices in the United States, and therefore its technical documents are also located outside of the United States.  *Id.* ¶ 14.

    Defendant LG Electronics U.S.A., Inc. ("LGEUS") is a corporation founded under the laws of Delaware with its principal place of business in Englewood Cliffs, New Jersey.  *Id.* ¶ 7.  LGEUS has offices in Santa Clara and San Francisco in the NDCA, where it has about 120 employees, including employees responsible for LG's relationship with third-parties such as Google as it relates to incorporation of the Accused Applications into LG products.  *Id.* ¶ 16.  For example, the LG team responsible for ensuring that LG's devices, including the accused devices, properly run Android, are located in Santa Clara.  *Id*.  This team regularly communicates and interacts with Google personnel located in Google's Mountain View headquarters.  *Id.*  LGEKR employees also regularly travel to LGEUS's San Francisco Bay Area offices to coordinate with LGEUS and Google regarding incorporation of the Accused Applications into LG products.  *Id.* ¶ 17.

    No employees of any LG entity control the design and development of any features of the Accused Applications.  *Id.* ¶ 8.  Nor does any LG entity have any employees that modify any

aspect of the source code for the Accused Applications. *Id.* ¶ 9. LG has no non-public technical documents relating to the Accused Applications. *Id.* ¶ 10.

### D.  AT&T Secure Family Was Researched, Designed, and Developed in the NDCA

Based on publicly available information, it appears that AT&T's Secure Family was researched, designed, and developed by third-party Location Labs at its headquarters in Emeryville, California within the NDCA. Lau Decl., Ex. 2 (Location Labs by Avast Blog); Ex 3 (Shanna Jan Resume); Ex. 4 (Location Labs Crunchbase Webpage). A team of approximately 30 engineers at Location Labs researched, designed, and developed Secure Family. Lau Decl., Ex. 2 (Location Labs by Avast Blog). Location Labs was later acquired by Avast Software s.r.o. ("Avast"). Lau Decl., Ex. 4 (Location Labs Crunchbase Webpage). Avast currently has four U.S. offices, two of which are in NDCA—Avast's Silicon Valley and Emeryville offices. Lau Decl., Ex. 5 (Avast Contacts Webpage). Avast does not have any offices in Texas. *Id.* Moreover, although AT&T is headquartered in Dallas, Texas, it appears they did not develop Secure Family, as detailed above. Instead, the lead app developer for Secure Family is a Location Labs employee located in Merced, California. Lau Decl., Ex. 6 (Secure Family Lead LinkedIn Profile).

### E.  Named Inventors Are Located in the NDCA

There are six named inventors in the Asserted Patents. Two of them, Brady Bruce and Michael Mitchell, currently reside in the NDCA in San Francisco and Santa Cruz, California, respectively. Lau Decl. ¶ 8. None of the named inventors currently reside in or near WDTX. *Id.*

## III.  LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought . . . ." 28 U.S.C. § 1404(a).  "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (*Volkswagen II*) (quoting 28 U.S.C. § 1404(a)).

"The determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

## IV.    THIS CASE COULD HAVE BEEN FILED IN THE NDCA

A patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  LGEUS has offices in the NDCA with over 120 employees.  Additionally, LGEKR is a foreign corporation, so venue is proper in any district, including the NDCA,.  28 U.S.C. § 1391(c)(3).  And because LGEKR employees regularly travel to the NDCA, the NDCA has personal jurisdiction over LGEKR.  Thus, these cases could have been brought in the NDCA.

## V. THE NDCA IS THE MOST CONVENIENT FORUM FOR THIS CASE

### A. The Private Interest Factors Heavily Favor Transfer to the NDCA

#### 1. The Relative Access to Sources of Proof

"[T]he sources of proof requirement is a meaningful factor" in the transfer analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (*Volkswagen II*). To determine the ease of access to sources of proof, the Court should look at "the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. 16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

This factor heavily favors transfer because the greatest volume of evidence is in the NDCA with Google and other key third-parties. As discussed in Section II.A above, Ikorongo's infringement allegations focus on features in the Accused Applications. A significant number of the development activities related to the accused features in Google Maps and Google+ occurred at Google's Mountain View headquarters. Friedland Decl. ¶¶ 4-8. And nearly all the documents that relate to the development or operation of these applications, including highly confidential proprietary source code, are either physically present in or electronically accessible from Google's offices within the NDCA. *Id.* ¶¶ 4, 7. In addition, based on publicly available information, it appears that Secure Family was researched, designed, and developed by third-party Location Labs from its Emeryville, California headquarters. *See* Section II.D, *supra*. Secure Family witnesses and documents are thus also likely to be in the NDCA. While some witnesses for Google Play Music and YouTube Music are in Seattle and New York, none are in the WDTX. Friedland Decl. ¶¶ 9-10.

Moreover, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). LG's relevant witnesses are located in the NDCA, as discussed in detail in Section II.C. Although

LGEUS is headquartered in New Jersey, LGEUS's employees that are responsible for LG's relationship with third-parties like Google as it relates to incorporation of the Accused Applications into LG products are located in the NDCA.  Ryu Decl. ¶ 16.

And while LG has offices in Austin, the relevant inquiry is whether it has a presence that is related to the litigation.  *See DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014) (granting transfer from the WDTX to the NDCA because "[t]here is no dispute [defendant] has a presence in this district, but that presence is unrelated to this litigation").  None of LG's employees with responsibilities for the accused functionality in the Accused Applications are located in Austin.  Ryu Decl. ¶¶ 8-10.  Defendants are also unaware of any Austin-based AT&T or Google employees involved in the research or design of the Accused Applications.

While Ikorongo Texas LLC has not yet identified any relevant evidence in WDTX, any such limited evidence is greatly outweighed by the relevant evidence located in the NDCA.  *See In re Genentech, Inc.*, 566 F.3d at 1345.  The relative ease of access of proof heavily favors transfer.

      **2.**    **The Availability of Compulsory Process to Secure the Attendance of Witnesses**

When deciding a transfer motion, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (*Volkswagen II*).  A court may subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

The availability of compulsory process weighs heavily in favor of transfer. As discussed above in connection with the first factor, the vast majority of third-party witnesses who may testify reside in the NDCA. No identifiable witnesses reside in WDTX or are subject to the Court's subpoena power. Accordingly, this factor weighs heavily in favor of a transfer.

### 3. The Convenience of Third-Party Witnesses and Party Witnesses Strongly Favors Transfer

"The convenience of witnesses is the single most important factor in the transfer analysis." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 20, 2020) (citing *In re Genentech, Inc.*, 566 F.3d at 1342). "The Court gives the convenience of party witnesses little weight." *Id.*

The convenience of witnesses weighs strongly in favor of transfer to NDCA. As detailed in Section II.B, the majority of key third-party witnesses reside in the NDCA, Seattle, and New York, while none reside in or even near this District. If this case remains in WDTX, those witnesses will need to fly and/or drive to Waco, Texas for trial and any hearings that require their testimony. Flying multiple employees to Waco and providing food, lodging, and transportation is unduly expensive. These inconveniences are easily avoided by transferring this action to the NDCA, where many third-party witnesses can drive less than 50 miles to any court proceeding and return home afterwards. Lau Decl. ¶ 7.

The lost productivity and interruption to the witnesses' daily and personal lives due to the time they will spend traveling also greatly weighs in favor of transfer. *See In re Volkswagen of Am.*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."). The shortest commercial flights to Waco from the Bay Area require around 5 hours and 15 minutes of air travel (including a one hour layover in Dallas), not to mention time spent getting to, from, and waiting at the airport. As

this Court has recognized, "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017), report and recommendation adopted, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018).

For any third-party witnesses that do not reside in the NDCA, adding flight time to the Bay Area is insignificant when compared to the cost of requiring Google and other third-party inventors to travel to Waco. These witnesses will already need food, lodging, and transportation in Waco because none reside in WDTX. Furthermore, the Federal Circuit has recently explained that "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *3 (Fed. Cir. July 28, 2020). Accordingly, any argument that other third parties who live outside of WDTX may be inconvenienced by a transfer does not withstand scrutiny.

Moreover, LGEUS's relevant party witnesses reside in the NDCA. It is also much more convenient for LGEKR Korea-based witnesses to travel to the Bay Area than to Waco, Texas, which requires over 17 hours of travel and multiple flights. Lau Decl. ¶¶ 5-6. While Waco may be more convenient for Ikorongo, it is improper for a court to use "its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech, Inc.*, 566 F.3d at 1344. This factor weighs in favor of transfer. *Parus Holdings Inc.*, 2020 WL 4905809, at *6 (W.D. Tex. Aug. 20, 2020).

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

There are no practical problems associated with transfer. This case is in its infancy. The *Markman* hearing will not occur for five months, on February 5, 2021. Thus, transfer at this point would not cause delays. This factor is neutral.

### B. The Public Interest Factors Favor Transfer

The public interest factors also weigh in favor of transfer. NDCA has a strong local interest in this dispute: LG integrates the Accused Applications into its products in the NDCA, and three of the Accused Applications, Google Maps, Google+, and AT&T Secure Family were developed in the NDCA. By contrast, the WDTX has little local interest in this dispute. Public records indicate Ikorongo Texas LLC was just recently incorporated in Texas on February 26, 2020, only weeks before it filed suit against LG. Lau Decl., Ex. 13. And the Amended Complaint provides the same North Carolina address for both Ikorongo Technology LLC and Ikorongo Texas, LLC, indicating that neither entity, including Ikorongo Texas, LLC, is based in the WDTX. Am. Compl., ECF No. 2 at ¶¶ 1-2. Moreover, although this Court may be able to try the case earlier than a court in the NDCA, "time to trial appears to be the most speculative" of the factors in the transfer analysis. *In re Genentech, Inc.,* 566 F.3d 1338, 1347 (Fed. Cir. 2009); *see also In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *3 (Fed. Cir. July 28, 2020) ("Nothing about [a] court's general ability to set a schedule directly speaks to that issue."). The familiarity with governing law and conflict of laws factors are neutral as both NDCA and this District are familiar with, and will apply, federal patent law.

## VI. CONCLUSION

For the foregoing reasons, LG respectfully requests the Court transfer this case to NDCA.

Dated:  September 11, 2020

/s/ *J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
Email: Mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
Email: Blake@themannfirm.com
**MANN TINDEL THOMPSON**
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Darin W. Snyder (*Pro Hac Vice*)
dsnyder@omm.com
David S. Almeling (*Pro Hac Vice*)
dalmeling@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Jeffrey Lau
jeffreylau@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000

***Attorneys for Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc.***

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), counsel for LG conferred with counsel for Ikorongo on September 9, 2020, in a good-faith effort to resolve the matter presented herein and counsel for Ikorongo stated that it opposed the motion.

*/s/ J. Mark Mann*
Mark Mann

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 11, 2020, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ J. Mark Mann*
Mark Mann